## Lyon *against* Houk.

The purchaser of a lease who has gone into possession of the premises, may tender to the lessor the amount of rent due, and thus relieve himself and the lessee from liability to distress; he is not a stranger to the lessor, but the lessee in an action of replevin, on the issue of rent or no rent in arrear, may avail himself of such tender by his assignee of the term.

ERROR to the special court of common pleas of *Cumberland* county.

This was an action of replevin by Jacob B. Lyon against George Houk and Peter M'Laughlin, for one hundred pieces of bloom iron of the value of 200 dollars. Declaration in common form. The defendant George Houk avowed the taking upon a distress for rent upon a lease of the premises, when the distress was made, dated the 13th June 1836, as follows:

" Article of agreement, made and entered into betwixt George Houk and George Himes of the one part, and Jacob B. Lyon of the other part. The said Houk and Himes agree to let and lease to the said Jacob B. Lyon, Salome Forge and sawmill, with all the water privileges thereunto belonging, situate in Dickinson township, Cumberland county; said lease to commence the fifteenth of this present month, and to expire on the first of April 1838. The said Houk and Himes also let and lease to the said Lyon for the period aforesaid, the houses now occupied by Michael Mullan and Philip M'Farlane, also the smith-shop and coal and iron houses, and all the privileges belonging to said houses near the said forge, the said Houk reserving to himself the privilege of passing and re-passing through the said forge and saw-mill yards to his fields and meadows, also the ducks and geese of the said Houk to have the entire and exclusive use of the dam of said forge. The said Houk and Himes agree and bind themselves to raise the main wing of the dam of said forge, sufficiently high to swell the water back to the creek common water mark. They also agree to pay half the expense of removing the gravel out of the head and tail races to a depth that the said Lyon shall consider sufficient. They the said Houk and Himes agree to give the said Lyon wood land of the Lusk tract of mountain land during the period of the lease aforesaid at the rate of five dollars per acre, the wood to be taken square across the land along the lines running east and west. They also agree to build a frame house eighteen by twenty-six feet, one and a half stories high, to be finished the fifteenth of July next. They also agree to give sufficient ground for gardens, for the houses aforesaid, and allow the tenants sufficient fire wood of dead and fallen

IX.—R*

timber as said Houk shall direct. In consideration of the leases and privileges aforesaid, the said Jacob B. Lyon agrees and binds himself to pay to the said George Houk and George Himes and their assigns, at the rate of five hundred dollars per annum, to be paid as follows : one hundred and twenty-five dollars to be paid on the first of July next, and one hundred and twenty-five dollars on the 15th September next, and one hundred and twenty-five dollars three months thereafter, and every three months to the first of April 1838. The said Jacob B. Lyon is to find his own tools and to keep up repairs at his own expense. The said Lyon agrees to keep the head gates at the dam in repair, and to deliver up the premises and houses aforesaid, to the said Houk and Himes on the said 1st of April 1838, in as good order as they are now, wear and tear and accidents excepted. In testimony whereof the said parties have hereunto set their hands and seals, this 13th day of June 1836."

Upon this lease the defendant claimed 125 dollars, rent for three months, due in advance on the 15th March 1837.

The plaintiff then gave in evidence the following agreement :

"Article of agreement made and concluded this 13th day of February 1837, between George Houk, of Dickinson township, Cumberland county, of the one part, and A. G. Ege, of Carlisle, in said county, of the other part, witnesseth, that the said George Houk, for the consideration hereinafter mentioned, doth covenant and agree to and with the said A. G. Ege, that he the said George Houk will, on or before the 5th of April next, grant, convey and sufficiently assure to the said A. G. Ege, his heirs and assigns, by deed in fee simple, with special warranty clear of all incumbrance, all the said George's undivided half part of Salome Forge, and all the lands connected therewith or in any wise appertaining thereto with the appurtenances. Same consisting of the forge tract, containing 120 acres, bought at sheriff's sale, in company with John Moore and George Himes—a tract containing 60 acres, and purchased after the first mentioned one at sheriff's sale by the said Himes, Houk and Moore. Also, the Lusk tract of mountain land, containing 123 acres, more or less, bought at sheriff's sale by said Houk, Himes and Moore, and also the saw-mill tract, containing 45 acres, more or less, purchased by said Houk and Himes—said four several tracts having all been sold by the sheriff as the property of Adam Houk, deceased—and the interest which the said John Moore had in the said property having been conveyed by him to said George Houk, who thereby became an equal owner of said property with said George Himes. The said George Houk further agrees that he will give possession of the said property hereby covenanted to be conveyed at and upon the execution and delivery of the deed aforesaid. And further that he will transfer and assign to the said A. G. Ege, all his the said George Houk's interest in the lease made by the said Houk and said George Himes to Jacob B. Lyon of a portion of the forge property aforesaid, which said

lease of the forge, &c., terminates on the 1st of April 1838, said Houk covenanting that the whole interest in said lease is in him by the written agreement of the said George Himes, and that he will assign his said interest to the said Ege when he executes the deed as aforesaid. It being agreed that all fences to be made and repairs to be completed, by any agreement heretofore made by the said George Houk, are to be made and completed by him the said George and not by the said A. G. Ege. In consideration whereof the said A. G. Ege covenants and agrees that he will pay therefor to the said George Houk, the sum of 5200 dollars, to be paid as follows, to wit: 2700 dollars on or before the 5th of April next, when the said deed, &c., is to be delivered, and the remaining 2500 dollars on or before the 1st of April 1838, without interest. And the said Ege further agrees that he will, on the delivery of the deed aforesaid to him by the said Houk, demise and lease unto the said George Houk from said day of delivery, until said of 1st April 1838, all the arable and cleared land belonging to said forge property, (not included in the lease aforesaid to the said Jacob B. Lyon,) with liberty to use dead trees and tops of trees for fire wood, and timber for rails. The said Ege to charge no rent for said lease; it being understood that Himes has rented his half of said arable land to said Houk until the 1st of April 1838, with same privileges as those, to be granted in said lease by A. G. Ege, as herein before stated. It is further understood and agreed, that the taxes for the present year are to be paid as follows, to wit: A. G. Ege pays the tax for 1837, for that part of the property leased as aforesaid to Jacob B. Lyon, and the said George Houk pays the tax for the said year 1837 for the residue of said property. It is further understood, that the said Houk is entitled to the rent from J. B. Lyon till the 5th of April next, ensuing the date hereof, the residue he is to assign to said Ege. And further, that the rails cut by said Houk are to be used only for fencing the premises and completing his contract with said George Himes, and for no other purpose. Witness our hands and seals, the 13th of February, 1837."

It was admitted that this agreement was duly executed and fulfilled on the 5th of April 1837; on the 3d of March 1837, Jacob B. Lyon and A. G. Ege entered into the following agreement:

" Memorandum of an agreement made this 3d day of March 1837, by and between Jacob B. Lyon, of Dickinson township, Cumberland county, and state of Pennsylvania, of the one part, and Andrew G. Ege, of the borough of Carlisle, county and state aforesaid, of the other or counter part, witnesseth, that the said Jacob B. Lyon, for and in consideration of the covenants to be kept and performed by the said A. G. Ege, doth transfer, assign and set over unto the said Ege, the right he enjoys under lease from George Houk and George Himes, dated the 13th of June 1836, of Salome Forge, which is by its terms to continue until the 1st of April 1838, at and on the same terms he the said Lyon has and holds the same, and

to deliver the possession of said forge and premises on the 15th of March instant, and in consideration thereof the said Ege agrees to take the several articles of personal property at said forge, which belongs thereto and is used therewith, together with the cord wood in rank set up in pit or pits, the cord wood at sixty cents per cord, and the other personal property at the fair cash valuation thereof, a schedule and valuation thereof to be made out and attached to this agreement—also the wood lease of timber land which said Lyon has from Dr. W. C. Chambers, at the rate of five dollars per acre for the residue thereof. The said Ege hereby covenants and agrees to pay the price of said property in two equal payments, the first on the 1st of April, and the other on the 1st of May, ensuing the date hereof, obligations to be given therefor when the possession is delivered as above specified—notice to be given by said Lyon to the wood choppers to cease chopping immediately.

" In witness whereof the said parties have hereunto set their hands and seals the day and year first above written."

Deposition of Michael Mullen: "Cumberland county, ss.—Agreeably to the annexed notice, personally came before the subscriber, a justice of the peace in and for said county of Cumberland, Michael Mullen, who being duly sworn according to law, doth depose and say:—I was authorised by A. G. Ege to make a tender of the rent of the forge due up to the 1st of April 1837 to George Houk, and I undertook to make the tender some time before the distress was made of the goods of the said A. G. Ege by the said George Houk, at the saw mill along side of the forge; I was at the saw mill, and Mr Houk came along riding on horseback, and I told him that I had the money for the rent due up to the 5th of April. I had it in specie; I had not time to count it, as he rode off; when he was going away he said he would have nothing to do with it or with A. G. Ege; I do not recollect which; the amount was either 27 dollars and some cents, or 28 dollars and some cents; I understood from Mr Ege that it was the rent up to the 5th of April 1837. I had the money yet when Mr M'Glaughlin made the distress, and told him that morning that he was ready and willing to pay it; I afterwards returned the money to Mr Ege's manager, Mr Beelman."

Cross-examined by George Houk, Esq., the witness further saith:—

" I understood that Mr Lyon had rented the property of Mr Houk; I understood that Mr Lyon was to pay 500 dollars a year, and it was to be paid quarterly; I understood from Mr Lyon and Mr Ege that Mr Ege had bought Mr Lyon's lease; I did not get time to show the money to Mr Houk, because Squire Houk rode off after I told him, before I had time to unfold it; on the morning that the distress was made, I was at the forge in company with M'Glaughlin, the constable, and George Houk, about fifteen minutes; I told Mr M'Glaughlin not to make the levy, that I had the

[Lyon v. Houk.]

money for the rent up to the 5th of April; I stated to M'Glaughlin that I had 27 dollars and some cents, or·28 dollars and some cents, I do not recollect which; Mr M'Glaughlin refused to take it, and asked above 100 dollars; I did not show them any money at that time or any other; Mr Ege had directed me not to suffer the property to be levied on and removed or taken away, and at the risk of his, the deponent's, life he would not suffer it to be done, (it is admitted by the parties themselves that the blooms distrained were the property of J. B. Lyon.)   I think the levy was made about the 17th, or from that to the 20th of March 1837, Houk and me, it appears to me, we might have had a conversation between the time we met at the saw mill and the time the levy was made, but I do not remember it; Mr Houk was riding at a walk the morning that I spoke to him at the saw mill, he did not stop but drawed up the mare; then when I pulled it out, he rode on, and said he would have nothing to do with it or with Galbraith Ege, I do not know which; I cannot recollect the time, but think it was not more than two days from the time I saw Houk at the forge that the levy was made.   Further saith not."

It was agreed that if the tender made by A. G. Ege to George Houk, as stated in the deposition of Mullen, followed up by bringing the money into court, would under any state of pleading avail the plaintiff, it shall be in like manner available, under the present state of the pleadings.   The money tendered admitted to be in court.

The Court delivered the following charge to the jury, which was excepted to by both parties.

" George Houk and George Himes being the owners of a forge property, leased it by their indenture of 13th of June 1836, to the plaintiff, J. B. Lyon, at an annual rent of 500 dollars, payable quarterly in advance.

" On the 13th of February 1837, George Hook entered into an article of agreement with A. G. Ege for the sale of the property.   By the terms of the article, which were duly complied with, Houk was to render a deed for the property, and possession, on the 5th of April following.   He was also to be entitled to the rent from Lyon after the 5th of April—Houk to have it till that time.   Ege having purchased the lease of Lyon (on the 3d of March 1837), took possession of the property on the 15th of March; on the 16th or 17th of the same month, according to the deposition of Mullen, Ege caused a tender to be made to Houk of the proportion of rent which he considered himself entitled to, on the then current quarter, namely, up to the 5th of April.   Houk, disregarding the tender, distrained the goods of Lyon on the premises for the rent of the entire quarter.   Lyon replevied the goods, and the defence to the replevin is, that there was no rent in arrear.   The plaintiff contended that the tender by Ege of the proportion of rent due to Houk, extinguished the right of the latter to distrain—the court instruct the jury that under the

agreement between Houk and Ege, Houk was entitled to 28 dollars 67 cents, as his proportion of the rent of the quarter in dispute, (that the balance belonged to Ege,) and that the tender made by Ege did not extinguish his claim, or his right of distress, although at the time of making the tender and distress, he knew that Ege was in possession of the premises.  It might have been otherwise had he been privy to the agreement between Ege and Lyon, by which Ege covenants to pay the rent—or had notice of such agreement been given to him.

" The jury will therefore find for the defendant, and that there is rent in arrear 28 dollars 67 cents, with interest from the date of distress—and that the value of the goods distrained is of the same amount."

The plaintiff moved the court for a new trial, on the ground of misdirection to the jury, which was overruled on the following ground:

" In this case the plaintiff moved for a new trial, on the ground that the court erred in charging the jury that the tender made by Ege to Houk was not available to him in this suit.  That the charge was correct, having regard to the evidence in the cause, I am well satisfied, for though in the charge the fact was assumed, through misapprehension, that Ege was in possession of the demised premises at the time of the tender and distress, there was no evidence whatever of the fact—nothing to be left to the jury from which they could infer the fact.  It is not necessary, then, to inquire whether the tender would have been good, had Ege been in possession of the premises, as the court supposed he was, but merely whether it was good, Ege not being in possession, and that it was not, is quite certain.  Therefore, the motion for a new trial on the part of the plaintiff is dismissed."

*Watts* and *Alexander*, for plaintiff in error.  The assignee of the term, by reason of the mere fact of becoming such, subjects himself to the liability of the payment of the rent: but in this case he had taken actual possession, and it was a sufficient evidence of that, that the tender was made on the premises.   6 *Law Lib.* 140, 141, 142. 151, 152. 158; 3 *Salk.* 4.

*Gaullaher* and *Biddle, contra,* cited 2 *Saund. Pl. and Ev.* 419; *Chit. on Con.* 302.

The opinion of the Court was delivered by

KENNEDY, J.—A. G. Ege having contracted with George Houk, one of the original lessors, who had become sole owner of the reversionary interest by purchase from George Himes, his co-lessor, for the purchase of the reversionary interest in the leased premsses, the latter, as between themselves, was only entitled to the rent from the 15th of March 1837, to the 5th of the following month, making

[Lyon v. Houk.]

twenty days, which, at the rate of 500 dollars rent *per annum*, would have been equal to about 27 dollars 40 cents. The 15th of March was the commencement of the quarter, and the rent, according to the lease which Lyon had taken of Houk & Himes, was payable quarterly in advance. But then, by the agreement which Ege had made with Houk for the purchase of the reversionary interest in the leased premises, Ege was to have the residue of the quarter's rent, so that 27 dollars 40 cents was all that Houk had any right to claim of Ege, considering the latter as the tenant in possession, as in fact he was'; because, after his purchase of the reversion from Houk, he, on the 15th of March 1837, came into the actual possession of the leased premises under a purchase from Lyon, the lessee, of his right therein, made previously, on the third of the same month. By this means he acquired all the interest of Lyon, the lessee, in the premises, as well as that of the lessors, to a limited extent. Having come thus rightfully into the actual possession, as tenant, at least, of the leased premises, and being in possession as such of the same, when the rent became payable, on the 15th of March, it was his duty to see to the payment of it, as he thereby made himself either liable to pay, or to be distrained on for it, if he did not. Having thus become a privy in interest, he was consequently a proper person to tender all the rent coming to Houk, as between the latter and himself. *Co. Lit.* 206 *b*, 207 *a;* 1 *Saund. Rep.* 203, *note b;* Williams *v.* Bosanquet, 1 *B. & B.* 461; *Latch.* 107; 7 *Co.* 13. In this respect he stood in the shoes of Lyon, the original lessee; and moreover, as claiming an interest in the rent itself, by purchase from Houk. Then if he tendered, or caused a sufficient sum of money to be tendered, Houk ought either to have received it, or not to have distrained for it subsequently, without having made a personal demand of it, and a refusal on the part of Ege to pay. *Gilbert on Rents* 81, 82, 83; *Hol.* 207; 2 *Rolle.* 427. A distress is a summary remedy, given by law for the recovery of rent, and may be considered equivalent, in some respects, to an action in which a judgment is obtained, and an execution awarded for the recovery of it. But it is very obvious, if an action were to be brought for the recovery of rent, after a tender of payment had been made of it to the landlord, without his having subsequently made a demand of the rent from the tenant, the tenant, by pleading the tender, and bringing the money into court, would defeat the plaintiff in his action, and recover from him the costs expended by the defendant on account of it. We therefore think that the court below erred in charging the jury that the tender made by Ege of the rent coming to Houk, did not take away or suspend the right of the latter to distrain for it, until he made a demand on Ege for it, and the latter refused or omitted to pay it.

Judgment reversed, and a *venire de novo* awarded.